Bank of Verona and others, Appellants, vs. Stewart and others, Respondents.

*November 11, 1936—February 9, 1937.*

*Wm. R. Curkeet* and *Carl Flom,* both of Madison, for the appellants.

For the respondents there was a brief by *Hill, Beckwith & Harrington,* and oral argument by *George A. Solsrud,* all of Madison.

The following opinion was filed December 8, 1936:

FOWLER, J.    The trial court held that the statute of limitations had run against the defendants and based its conclusion on the fact that this court ruled in *Kaestner v. Kuechle,* 194 Wis. 72, 216 N. W. 141, that the creditor of the corporation must elect whether to sue the corporation on the debt itself or the stockholders on their statutory liability, and that on electing to sue one he lost his remedy against the other.    From this the trial court concluded that as both the corporation and the stockholders could not be sued their obligation was not joint, and that not being joint, sec. 330.47, Stats., did not

apply and the payment of interest by the corporation did not toll the statute of limitations as to the stockholders, even though they knew of and consented to the payments.

Counsel for appellants contend that the *Kaestner Case, supra,* was erroneously decided, and we are of opinion that his position on this point is correct. The decision in that case goes on the theory that the organization of the corporation is not complete until fifty per cent of the corporate stock is subscribed, while previous decisions of the court are directly to the point that a corporation is completely organized when its articles of incorporation are signed and filed and the certificate of organization is issued. *Badger Paper Co. v. Rose,* 95 Wis. 145, 70 N. W. 302; *Sentinel Co. v. A. D. Meiselbach M. W. Co.* 144 Wis. 224, 227, 128 N. W. 861; *Peyton v. Minong Lumber & Lath Co.* 149 Wis. 66, 72, 135 N. W. 518. None of these decisions is referred to in the opinion of the *Kaestner Case.* The statement in the opinion that the remedies against the corporation and the stockholders are inconsistent, wherefore a creditor must sue either the corporation or the stockholders, and is bound by his election, is contrary to sec. 286.18, Stats., which expressly provides that when a creditor seeks to charge stockholders on account of a statutory liability he may commence an action for that purpose and may join the corporation. Remedies cannot be inconsistent that by statute may be prosecuted together. The holding of the case that the stockholder cannot be sued after action has been prosecuted against the corporation is also contrary to the provision of sec. 286.18, Stats., that no remedy given by ch. 286 shall prevent the enforcement of any liability mentioned in an additional action if there are parties or property that cannot be reached by the first action or judgment. Upon both propositions stated in the syllabus of the case, (1) that when twenty per cent of its stock is not paid (or fifty per cent thereof subscribed) the corporation is defectively organized, and (2) that a creditor is estopped from suing

stockholders individually upon their statutory liability for the corporation's doing business before twenty per cent of the capital stock is paid in (or fifty per cent is subscribed), the *Kaestner* decision is overruled.

However, it does not necessarily follow that because the trial court based its ruling that the statute of limitations had barred the action upon a decision which we here overrule, that its decision was wrong. It may stand on another basis, if another sound basis exists.

The statute on which the action is based, sec. 180.06 (4) provides as follows:

"The corporation [any corporation organized under ch. 180] shall not transact business with any others than its members until one half of its capital stock shall have been subscribed and one fifth of its authorized capital actually paid in. . . . If any obligation shall be contracted in violation hereof, the corporation offending shall have no right of action thereon; but the signer or signers of the articles and the subscriber or subscribers for stock transacting such business or authorizing the same, or having knowledge thereof, consenting to the incurring of any debt or liability, as well as the stockholders then existing, shall be personally liable upon the same."

Sec. 330.47, Stats., relating to payments by joint contractors not tolling the statute of limitations, reads as follows:

"If there are two or more joint contractors or joint executors or administrators of any contractor no one of them shall lose the benefit of the provisions of this chapter, so as to be chargeable, by reason only of any payment made by any other or others of them."

The appellants contend that the corporation and the stockholders were jointly liable for the amount of the original note; that the subsequent renewals did not operate as payment of the debt evidenced by the note; and that the payments of interest by the corporation tolled the statute of limitations under sec. 330.47, Stats., in view of the knowledge and con-

sent of the stockholders to such payment. Were the stockholders signers of the original note, the appellants would be right in their contention. The renewals of the note did not operate as a payment or extinguishment of the original debt. *Rosendale State Bank v. Holland,* 195 Wis. 131, 217 N. W. 645. But the stockholders were not parties to the note. They were, strictly speaking, not liable on the note, but were liable for the debt which the note evidenced. Their obligation was distinct and separate from the obligation of the corporation. Their obligation was on the statute, the corporation's on the note. The mere fact that one is liable for a debt evidenced by a note does not make him a joint obligor with the maker of the note.

"According to Bouvier, the term 'joint' 'is used to express a common property interest enjoyed or a common liability incurred by two or more persons.' "

*State ex rel. Princeton v. Maik,* 113 Wis. 239, 247, 89 N. W. 183. Although both the corporation and the stockholders were liable for the original debt, the ground of their liability was not "common," and a common ground of liability is necessary to render liability joint. *Zutter v. O'Connell,* 200 Wis. 601, 229 N. W. 74; *Buggs v. Wolff,* 201 Wis. 533, 230 N. W. 621. A joint liability on choses in action implies that, "though each person subject to it is liable for the whole, they are all treated in law as together constituting one legal entity, and must be sued together or a release to one will operate in favor of all. One who pays the debt is entitled to contribution." 2 Bouvier's Law Dictionary (Rawle's 3d Rev.) 1702. The corporation and the stockholders cannot be considered as "constituting one legal entity." It would hardly be contended that a release of the stockholders would have released the corporation. Nor would payment by the corporation have entitled it to contribution from the stockholders. This court has held that a mortgagor and his vendee who had promised

to pay the mortgage debt are not "joint debtors or jointly liable;" "their liabilities are separate and distinct; neither party could do anything to increase the liability of the other;" and that a payment by the vendee does not toll the statute of limitations on the mortgage debt as to the mortgagor. *Cottrell v. Shepherd*, 86 Wis. 649, 653, 57 N. W. 983. When the mortgagor exacted the promise to pay from the vendee he consented to, in fact procured the payments to be made by him, so that if the mortgagor and his vendee were "joint contractors" the latter's payments on the debt would not have suspended the running of the statute as to the former under sec. 330.47, Stats., as the statute was at the time of the decision of the *Cottrell Case* the same as it is now. The rule of this case as to the statute of limitations, while not universal, is said to be the better rule and to be supported by the weight of authority, in a note in 18 A. L. R. 1033, where the cases pro and con are cited and stated.

The appellants contend that a payment made on a debt by anyone liable to pay it, whether his obligation is joint or several, suspends the statute of limitations as to all persons so liable who have knowledge of it and assented to it, and cite 37 Corpus Juris, page 1160, in support of their contention. Whether or not the text so broadly stated is supported by the cases it cites in its support, it cannot prevail in this jurisdiction in the face of the *Cottrell Case, supra.*

As to the point of tolling of the statute of limitations when it has begun to run against the stockholders by partial payments or extension of obligations of corporations for which statutes make the stockholders liable, the courts are not in harmony. Such statutes are varied in character. Under a California statute making stockholders liable for corporate obligations and providing that actions to enforce such liability must be brought within three years after creation of the liability, the renewal or continuance in force of the obligation

by the corporation does not toll the statute as to the stockholders. Numerous California cases to this effect are stated in a note in 97 A. L. R. 638. New York cases are stated in the same note under a statute making stockholders of a specified class of corporations liable to the amount of their stock for debts payable within one year from the time the debt is contracted, until all the stock of the corporation has been paid in, but providing that suit shall not be brought to enforce the liability after a specified period after the debt becomes due. Extending time of payment of the debt by the corporation does not toll the statute against the stockholders. The same would be true of keeping the debt in force by partial payments. The note cites *Brigham v. Nathan,* 62 Kan. 243, 62 Pac. 319, and *Corrington v. Crosby,* 56 N. D. 74, 215 N. W. 924, construing similar statutes to the contrary. The Kansas case, however, is to the effect that an extension of time does not toll the statute. Irrespective of these decisions we are of opinion, for the reasons first above stated, that the statute of limitations barred the instant action unless another contention made by the appellants is upheld.

The contention next above referred to is that the corporation that incurred the debt here involved is a "moneyed corporation," and that sec. 330.51, Stats., provides that ch. 330, Stats., relating to limitation of actions, "shall not affect actions against . . . stockholders of a moneyed corporation or banking association to recover . . . a liability created by law;" but that "such actions must be brought within six years after discovery by the aggrieved party of the facts upon which the . . . liability was created." The facts on which the liability of the stockholders' debt rests were not discovered until 1935 and the liability involved is no doubt one "created by law." *Gores v. Field,* 109 Wis. 408, 414, 84 N. W. 867, 85 N. W. 411. However, the statute was taken from New York. It first appeared in our statutes of 1858 as sec. 36, ch. 138, p. 823. At that time like provision stood in 2 Rev.

Stats. N. Y. (1852 Ed.) Code of Procedure, ch. 4, p. 499, § 109. "Moneyed corporations" were defined in another section of the same New York statutes, in a "Title" relating to "banking associations and bankers" (vol. I, p. 1113), as a "corporation having banking powers, or having the power to make loans upon pledges or deposits, or authorized by law to make insurances" (vol. I, p. 1122, § 54). We consider that in taking over the New York statute we took it over with the meaning ascribed to "moneyed corporations" by the statute last cited. Had the New York courts, in interpreting the statute taken over, defined the term "moneyed corporation" as the New York statute defined it, there would be no question that the term had the meaning in our statute given to it by the New York courts. We consider that equal force should be given to the statutory definition. In the phrase "moneyed corporation or banking association" the two terms are used in apposition or at least as referring to like kinds of institutions. The meaning contended for by appellants would make the term applicable to every sort of a corporation except the comparatively small class of eleemosynary and other non-profit corporations. Had the legislature so intended they would have so stated. They would hardly have used the word "moneyed" at all. They would more likely have used the phrase "corporations organized for profit" or the clause "except those not organized for profit" if they had intended such meaning.

Appellants contend in this connection that the statutory definition in the New York statutes should be construed as limited to the title of the statutes in which the definition is incorporated, and should not be applied to sec. 330.51. The supreme court of the United States has construed the definition as not so limited and expressly ruled that it applies to the term as used in the New York statute from which our sec. 330.51 was taken. *Platt v. Wilmot,* 193 U. S. 602, 611, 24 Sup. Ct. 542. Also the words "liability created by law"

in the latter statute were held in *Brinckerhoff v. Bostwick,* 99 N. Y. 185, 1 N. E. 663, not to be limited to statutes creating stockholders' liability contained in the title containing the definition, but applied to all statutes creating such liability. Like reason, in view of its origin, requires like construction of our sec. 330.51. The term "moneyed institution" in a Maryland statute has received a like construction in *Industrial Corp. v. State Tax Comm.* 134 Md. 379, 106 Atl. 852. It is pointed out in appellants' brief that the courts of Kansas and South Carolina, *State v. Chance,* 82 Kan. 392, 108 Pac. 791, and *Grice v. Anderson,* 109 S. C. 388, 96 S. E. 222, have interpreted the term "moneyed corporation" as including all corporations organized for profit; but we cannot agree that the term should be so construed in the statute here under consideration.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 9, 1937.